IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVEN P. COLEMAN, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security Administration, )<br>)<br>Defendant. )<br>) | 4:11CV3077<br><br>MEMORANDUM AND ORDER<br>TO REMAND |

This matter is before the court on plaintiff's appeal pursuant to 42 U.S.C. § 405(g) from the Social Security Administration's denial of his request for disability benefits. Filing No. 1. This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). The plaintiff appeals the Commissioner's decision to deny his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.* (first application), and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* (second application). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383. The Commissioner denied the applications of the plaintiff initially and on reconsideration. The Administrative Law Judge[1] ("ALJ") determined that plaintiff was not under a "disability" as defined under the Act. The Commissioner affirmed this finding.

---

[1] Patricia Leary Flierl from California was designated to hear this case. The ALJ conducted the hearing from California. A vocational expert attended the hearing in California. Plaintiff and his counsel participated from North Platte, Nebraska.

**BACKGROUND**

Plaintiff is 29 years of age. He alleged his disability began on January 30, 2006, when he was 23 years of age. Plaintiff alleges that he is disabled due to a brain injury with impaired cognitive development, bipolar disorder, anger issues, and an inability to deal with stress. At the age of 16-18 months, he fell off of a slide and suffered brain injuries. During his school years, he participated in resource classes. He did graduate from high school, although he primarily attended special education classes. He has a daughter who lives in Colorado, and he does not have custody. Most recently, he worked for about one and one-half years until he could no longer take the stress and the hours from that job. His past relevant work included cooking and construction (as a flagger). At the hearing plaintiff testified that he had anger problems, insomnia, difficulty with memory, concentration, and learning new information. Plaintiff takes Cymbriax for his bipolar condition and Topamax for anxiety. He first started taking medications for his mental problems in 2007. Plaintiff contends that the more he works, the more stressed he becomes. Plaintiff also has a moderately severe loss in hearing. Filing No. 13-7, Ex. 14F, Page 81 of 86, Page ID # 408.

At the time of his application, plaintiff contended he had held 10 jobs in two years. He lost them due to lack of motivation, poor job performance, inability to accept criticism, and in one case for theft of scratch tickets. In 2008, plaintiff took a job in a college cafeteria. He worked at his college cafeteria job for about least 14 months for six to seven hours per day. He then quit, stating he could not handle the hours and pressures.

The government relies on the consultative psychological examination conducted by Lisa Jones on October 25, 2006. Filing No. 13-7, Ex. 2F, 4 of 86, Page ID #331. Dr. Jones assessed dementia due to head trauma with behavioral disturbance, borderline

intellectual functioning, and a traumatic brain injury, and identified a need for help with taking care of funds because of his short-term memory and impulsivity issues. She further found he could understand simple instructions with close supervision. The government also relied on Allan J. Smith, Ph.D., who conducted a vocational assessment on plaintiff. He estimated plaintiff had a low average IQ, with a GAF score of 46.[2] Filing No. 13-7, Tr. at 326, Page ID # 354. Dr. Jones gave plaintiff a GAF score of 65. Filing No. 13-7, Tr. at 308, Page ID # 336. The progress notes by Y.Z. Leonard indicate a GAF score of 60. *Id*. at 333, PAGE ID # 361. He began seeing Y.Z. Leonard, APRN, for his mental health issues. She noted that he improved over the months she saw him. On August 12, 2008, Tamara R. Johnson, M.D., noted that plaintiff's mental state was normal. Filing No. 13-7, Ex. 7F, page 34 of 86, Page ID #361. This improvement seemed to continue through October 2009, according to Dr. Johnson's notes. It was during this time period, however, that plaintiff quit his last job.

The ALJ asked the vocational expert to answer three hypothetical questions. When answering two of the three hypotheticals discussed below, the vocational expert testified that plaintiff could do significant numbers of jobs in the economy. With regard to the third question, the vocational expert testified there were no jobs plaintiff could perform.

---

[2]The GAF is a numerical assessment between zero and 100 that reflects a mental health examiner's judgment of the individual's social, occupational, and psychological function. *Kluesner v. Astrue*, 607 F.3d 533, 535 (8th Cir. 2010). A GAF score of 50 reflects serious limitations in the patient's general ability to perform basic tasks of daily life. *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (noting that the vocational expert considered a claimant with a GAF of 50 unable to find any work). A GAF scale score of 51-60 reflects the clinician's opinion that a patient has moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 1994). A GAF score of 61-70 is considered indicative of some mild symptoms, e.g., depressed mood and mild insomnia or some difficulty in social, occupational, or schooling function, e.g., occasional truancy, or theft within the household, but generally functioning pretty well and has some meaningful interpersonal relationships. *Id.*

The ALJ determined that the plaintiff's impairments caused more than minimal limitation on his work activities. Filing No. 13-2, at Page ID #35, page 3 of 9 of the ALJ decision. The ALJ further found that plaintiff does not have an impairment or combination of impairments that meets or medically qualifies as one of the listed impairments set forth in 20 C.F.R. Part 404, and Appendix 1. *Id.* at 3-5; Page ID #35-37. The ALJ then considered the plaintiff's residual functional capacity and determined:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform 1-2 step job tasks with no interaction with the public and limited on the job communication.

*Id.* at 5 of 9; Page ID #37.

The ALJ summarized the evidence in his hearing decision, and stated:

> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

*Id.* at 8 of 9; ID #40.

**LAW**

In an appeal of the denial of Social Security disability benefits, this court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole'" and "'may not reverse . . . merely because substantial evidence would support a contrary outcome.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002). Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion." *Id.* (quoting *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010)).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). A decision supported by substantial evidence may not be reversed, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the Commissioner's action." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (internal quotations and citations omitted). The court must consider evidence that detracts from the Commissioner's decision in addition to evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The court must also determine whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). The court does not owe deference to the Commissioner's legal conclusions. *See Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008).

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To determine whether a claimant is disabled, the Commissioner must perform the five-step sequential analysis described in

the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Specifically, the Commissioner must determine: "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to [his] past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Tilley v. Astrue*, 580 F.3d 675, 678 n.9 (8th Cir. 2009); *see also Kluesner v. Astrue*, 607 F.3d 533, 536-37 (8th Cir. 2010). "Through step four of this analysis, the claimant has the burden of showing that [he] is disabled." *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). After the analysis reaches step five, however, "the burden shift[s] to the Commissioner to show that there are other jobs in the economy that [the] claimant can perform." *Id.* The regulations explicitly provide that if the Social Security Administration ("SSA") finds that a claimant is disabled or not disabled at a step, the SSA makes its determination or decision and it does not go on to the next step. 20 C.F.R. § 404.1520(a)(4).

## DISCUSSION

*Vocational Expert*

Plaintiff contends that the ALJ failed to include any mention of his mental impairments as a result of his brain damage, his bipolar disorder, or other mental impairments to the vocational expert ("VE"). To assist an ALJ making a disability determination, a VE is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar Residual Functional Capacity ("RFC") to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by

substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that is in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

The ALJ asked the following hypotheticals of the vocational expert, Jose L. Chaparro:[3]

> Q: But we have hypothetical one, let's assume a hypothetical individual same age as Claimant, same educational background, same work history, no exertional imitations. Is limited to simple and repetitive tasks with no interaction with the public and limited on the job communication. Past relevant work?

---

[3]Jose L. Chaparro was designated as the vocational expert in this case.

7

The VE then went on to list jobs that the hypothetical person could perform such as a commercial or institutional cleaner, a caretaker, or agricultural produce packer. Filing No. 13-2, Tr. at 59, Page ID #82.

> Q. Hypothetical two is the same as one except I'm going to limit it to one to two step job tasks. Does that change anything? One to two step job tasks.
>
> A. It would. This person could still do commercial or institutional cleaner.

*Id*. TR. at 60, Page ID #83.

> Q. Hypothetical three is the same as hypothetical two except this individual has a poor ability to relate to supervisors and co-workers.
>
> A. "Is that the only change?"
>
> Q. "No."
>
> A. "Oh, I'm sorry."
>
> Q. "I'm still writing. And a poor ability to maintain adequate attendance. Jobs?"
>
> A. "No jobs, Your Honor."

*Id*. TR. at 61, Page ID #83.

The court finds the hypothetical questions do not include plaintiff's significant mental impairments and do not constitute substantial evidence on this record. Plaintiff clearly has head trauma and dementia, as well as borderline intellectual functioning, bipolar disorder, stress, and depression. He takes medications that make him tired and sleepy. The ALJ did not explicitly or implicitly include any of those symptoms or limitations in any of the three hypotheticals presented to the VE. Further, even with the hypotheticals as posed, the vocational expert said there existed no jobs available to the plaintiff when you factor in poor ability to show up for the job. The ALJ did not look at the impairments in

combination or present them to the VE in combination. See 20 C.F.R. §§ 404.1523 and 404.1545(e). Even the consulting doctor, Dr. Jones, found that plaintiff needed supervision on the job. The court finds the hypotheticals posed to the VE are defective and are not substantial evidence to support the conclusions of the ALJ.

The court finds this case should be remanded to the Secretary for further consideration of the mental deficiencies suffered by the plaintiff. It is indisputable that such deficiencies exist. The only question is one of degree and how these deficiencies affect plaintiff's ability to work. Accordingly, the court will remand this case for rehearing on the mental issues in this case.

THEREFORE, IT IS ORDERED that this case is remanded to the Secretary for further review as set forth herein.

DATED this 30th day of March, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge